970 So.2d 221 (2007)
Karen FRAZIER, Appellant
v.
MISSISSIPPI DEPARTMENT OF TRANSPORTATION, Appellee.
No. 2006-SA-01739-COA.
Court of Appeals of Mississippi.
December 4, 2007.
Yancy B. Burns, Jackson, attorney for appellant.
John T. Kitchens, Biloxi, attorney for appellee.
Before LEE, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court.
¶ 1. Karen Frazier brought this action against the Mississippi Department of Transportation ("MDOT") for damages arising out of a car accident. The Scott County Circuit Court granted summary judgment in favor of MDOT. Frazier appeals and argues the trial court erred in using governmental immunity to bar her claim. We affirm the trial court's ruling.

FACTS
¶ 2. On May 7, 2003, Frazier was traveling north on Highway 13 in Scott County. While she was returning home from work, between 2:30 and 3:00 p.m., Frazier lost control of her car. Her car left the road and she hit a tree in a field. She had been *223 driving 55 miles per hour before the collision.
¶ 3. Frazier testified that she did not remember whether there were any signs warning her about the road construction or loose gravel. Her husband, Billy Frazier, testified that he drove to the scene of the accident to check on his wife. He did not remember seeing any warning signs during this drive. He also drove home on Highway 13 after he left his wife at the hospital, and he did not remember seeing any warning signs where his wife had her accident. He does remember seeing warning signs the next day on Highway 13.
¶ 4. Earlier in the day of May 7, 2003, at approximately 9:00 a.m., MDOT began refurbishing a section of Highway 13 by pouring tar into the cracks in the highway. It also distributed slag and gravel over the road, so the tar could properly set and not damage any cars. This process is called sealing, and it is a standard maintenance procedure used by MDOT.
¶ 5. Mike Atkinson, the MDOT project supervisor, testified by affidavit that signs warning of loose rock, road construction, and a 45 mile per hour speed limit were set up on the day of the accident and the day before the accident. Atkinson stated that the road looked good when he left, and he did not notice any dangerous condition.
¶ 6. Tommy Phillips, a supervisor for MDOT, testified that the warning signs were in position before Frazier's wreck and were in conformity with MDOT procedures. He testified that he received a call from the Scott County Sheriff's Office, at approximately 5:30 p.m. on May 7, 2003. The sheriff's office informed him that there had been an accident earlier that day on the section of Highway 13 that had been sealed that morning.

STANDARD OF REVIEW
¶ 7. This Court employs a de novo standard of review of a lower court's grant or denial of summary judgment and examines all the evidentiary matters before it: admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. at 1177. If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his or her favor. Id. Issues of fact sufficient to require reversal of a summary judgment obviously are present where one party swears to one version of the matter in issue, and another says the opposite. Id.

ANALYSIS
¶ 8. Frazier argues that the loose gravel constituted a dangerous condition. She argues that because MDOT created the dangerous condition it is not immune under the Mississippi Tort Claims Act. However, Frazier is only partially correct because MDOT can also retain immunity if it does not have notice of the dangerous condition. Mississippi Code Annotated Section 11-46-9 (Rev.2002) provides:
(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
. . . .
(v) Arising out of an injury cause by a dangerous condition on property of the governmental entity that was not caused by the negligent or other wrongful conduct of an employee of the governmental entity or of the governmental entity or of which the governmental entity did no have notice, *224 either actual or constructive, and adequate opportunity to protect or warn against; provided, however, that a governmental entity shall not be liable for the failure to warn of a dangerous condition which is obvious to one exercising due care;
(w) Arising out of the absence, condition, malfunction or removal by third parties of any sign, signal, warning device, illumination device, guard rail or median barrier, unless the absence, condition, malfunction or removal is not corrected by the governmental entity responsible for its maintenance within a reasonable time after actual or constructive notice.
¶ 9. This statute and "the corresponding case law make it clear that a governmental entity is immune from claims arising from a non-obvious dangerous condition on government property, or failure to warn of the dangerous condition, absent actual or constructive notice of the dangerous condition." Jones v. Mississippi Trans. Comm'n, 920 So.2d 516, 518-19(¶ 4) (Miss.Ct.App.2006). Therefore, a governmental entity charged with maintaining and repairing roads, owes a duty to warn motorist or repair roads only if it is "given notice of a dangerous condition." Id. at 519(¶ 4). As we have previously stated, "[i]n the absence of notice, a governmental entity's decision to maintain or repair roads, or to place traffic control devices or signs, is purely discretionary, and the entity will be immune from suit even upon proof of an abuse of discretion." Id; Miss.Code Ann. § 11-46-9(1)(d) (Rev. 2001); See Barrentine v. Mississippi Dep't of Transp., 913 So.2d 391, 393(¶ 8) (Miss. Ct.App.2005). Thus, the decisive question under the guidelines of the Mississippi Tort Claims Act is whether MDOT had notice of the alleged defective seal. If MDOT did not have notice of the alleged dangerous condition, it is immune from liability and whether or not to use road signs to warn is discretionary [under the Mississippi Tort Claims Act].
¶ 10. Atkinson, the MDOT supervisor in charge of the project, said in his deposition that the road looked good when he and his work crew left for the day. He also said it did not look dangerous. The first time MDOT received notice that Highway 13 might be in a dangerous condition was around 5:30 p.m. on May 7, when Phillips, another MDOT supervisor, received a phone call from the Scott County Sheriff's Office. Thus, MDOT did not receive notice of the dangerous condition, if one existed, until well after Frazier's accident. Furthermore, Frazier did not put forward any evidence that MDOT had notice of any defective condition. Thus, there was no genuine issue of material fact and MDOT was entitled to judgment as a matter of law.
¶ 11. Even if MDOT had notice that Highway 13 was in a dangerous condition before the accident, the uncontradicted evidence in this case shows that MDOT placed warning signs. Frazier and her husband infer in their testimony that there were no warning signs present on the day of the accident because they did not notice any signs while driving on Highway 13. The employees of MDOT assert that they placed the warning signs in the proper location, checked to see if they were in position before they began repairing the highway, and checked to see if the signs were in position after the accident. The trial court was correct in finding that there was no disputed issue of fact regarding whether or not signs were present even though neither Frazier nor her husband noticed them.
¶ 12. Therefore, we find that MDOT is immune from liability in this case, and we affirm the trial court's grant of summary *225 judgment because MDOT did not have notice that a dangerous condition existed.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF SCOTT COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.